**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

LUIS VICENTE,                          :
    *Plaintiff*,                     :
                        :
    v.                              :        Case No. 3:23-CV-245 (OAW)
                        :
WIGGINS, et al.,                       :
    *Defendants*.                   :

## INIITAL REVIEW ORDER

Unrepresented Plaintiff Luis Vicente has filed a complaint naming six defendants (Captain Wiggins, Warden Dougherty, Correction Officer Reyes, Captain Stanley, Lieutenant Davis, and Correction Officer Thornton), employees at the correctional facility where Plaintiff is an inmate (MacDougall-Walker Correctional Institution).  Plaintiff asserts claims for failure to protect, denial of due process, and deliberate indifference.  He seeks damages as well as declaratory and injunctive relief.

The Prison Litigation Reform Act requires that federal courts review complaints brought by prisoners seeking relief against a government entity or officer or employee of a government entity.  28 U.S.C. § 1915A(a).  Upon review, the court must dismiss the complaint, or any portion of the complaint, that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.  *See* 28 U.S.C. §§ 1915(e)(2)(b), 1915A(b).

The court thoroughly has reviewed all factual allegations in the complaint and has conducted an initial review of the allegations therein, pursuant to 28 U.S.C. § 1915A. Based on this initial review, the court orders as follows.

## I.    FACTUAL BACKGROUND

Rather than setting forth one statement of facts describing the incident underlying all five of his claims of relief in this action, Plaintiff has included separate facts sections for each (some of which are repetitive).  The court does not now set forth all of the facts alleged in each claim, but summarizes Plaintiff's basic allegations as context for its ruling.

The incident underlying this action occurred in April 2022, at MacDougall-Walker Correctional Institution.  Prior to the first week in April 2022, Plaintiff and his cellmate, inmate Varela, engaged in repeated verbal disagreements that resulted in Varela threatening Plaintiff with physical violence.  During the first week in April, Varela threatened to kill Plaintiff.

Plaintiff told Captain Wiggins about the threat and the prior conflicts with Varela, and he asked to be moved to another cell.  Captain Wiggins denied the request, conducted no investigation into the threat, and told Plaintiff to "[h]andle it like a man." Compl. ¶ 9.

In the evening of April 22, 2022, Plaintiff was working as a tierman in the common area of the cell block.  While the tierman is working, the closet where cleaning supplies and equipment are kept is accessible to inmates in the unit.  Captain Wiggins and Warden Dougherty were aware of this fact.  Plaintiff alleges that Captain Wiggins and Warden Dougherty also were aware of an ongoing history of prisoners at MacDougall using cleaning tools to assault other inmates, but they failed to take preventive action.

At approximately 11:30 p.m., Varela hit Plaintiff from behind with a "dust pan broom," an item with a wooden handle approximately fifteen inches long and weighing

2

about seven pounds.  *Id.* ¶¶ 12–13.  The first blow stunned and disoriented Plaintiff.
Subsequent blows split his left cheek and left eyebrow, and broke his nose.  Varela also
slammed Plaintiff's head into concrete steps.  At some point, the broom broke exposing
metal.  Plaintiff struggled with Varela for control of the weapon while Varela struck Plaintiff
with his hands.  The officer on duty in the cell block, Officer Thornton, did not intercede
to stop the altercation or issue any orders to stop.  At some point, other staff entered the
unit and forced Varela to stop the attack.

Following the attack, Plaintiff was taken to the hospital where he was diagnosed
with multiple lacerations, a broken nose, and a collapsed nasal passage.  Plaintiff now
experiences severe neck pain and difficulty breathing.

On April 26, 2022, after Plaintiff had returned from the hospital, he was informed
by Hearing Officer Reyes that he would receive a disciplinary report for fighting.  Officer
Reyes told Plaintiff, "There is no self defense in the DOC."  *Id.* ¶ 75.  Plaintiff interpreted
this statement to mean that self-defense could not be used as a defense to a disciplinary
charge for fighting.  Officer Reyes told Plaintiff he would be found guilty regardless of
whether he pleaded guilty or requested a hearing.  Officer Reyes encouraged Plaintiff to
sign the disciplinary report and to write "Under Duress" on the form.  *Id.* ¶ 78.  The decision
to issue the disciplinary report to Plaintiff was made by Captain Stanley, the facility
Intelligence Officer.

Plaintiff appealed the disciplinary finding on three grounds: (1) he was not
permitted to claim that he was acting in self-defense even though prison directives permit
self-defense to be used to mitigate sanctions; (2) he did not receive the disciplinary report

3

until forty-eight hours after the incident instead of the required twenty-four hours; and (3) he did not receive a disciplinary hearing until August 25, 2022, four months after the incident.

Lieutenant Davis was the disciplinary hearing officer.   Plaintiff contends that Lieutenant Davis was aware of the procedural improprieties.  Plaintiff's disciplinary appeal was denied for two reasons: (1) he was not permitted to write "under duress" when signing a disciplinary report; and (2) he did not retreat from the attack.

During a prior period of incarceration, Plaintiff was involved in several altercations with staff, for which he received and served disciplinary sanctions.  He alleges that the actions of Defendants Wiggins, Stanley, Davis, and Reyes were taken in retaliation for the disciplinary incidents from his prior period of incarceration.

## II.    DISCUSSION

Plaintiff identifies three causes of action in the five counts: failure to protect, denial of due process, and deliberate indifference.   The court also considers whether Plaintiff can state a cognizable retaliation claim.

### A.  Failure to Protect / Deliberate Indifference to Safety

Plaintiff alleges that Defendants Wiggins, Dougherty, and Thornton were deliberately indifferent to his safety, or failed to protect him from harm.  To state an Eighth Amendment claim for failure to protect or for deliberate indifference to safety, Plaintiff must show that he was confined under conditions that posed a substantial risk of serious harm, and that Defendants both knew that he faced a substantial risk of such harm and

failed to take reasonable actions to abate or to avert it.  *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Lewis v. Swicki*, 629 F. App'x 77, 79 (2d Cir. 2015) (citing *Hayes v. N.Y.C. Dep't of Corr.*, 84 F.3d 614, 620 (2d Cir. 1996)).  There is no "bright line test" to determine whether a risk of serious harm is "substantial" for Eighth Amendment purposes. *Lewis v. Siwicki*, 944 F.3d 427, 432 (2d Cir. 2019).  The court must "assess whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose *anyone* unwillingly to such a risk," i.e., "the prisoner must show that the risk of which he complains is not one that today's society chooses to tolerate."  *Helling v. McKinney*, 509 U.S. 25, 36 (1993) (emphasis in original).

### 1.  Captain Wiggins

Plaintiff alleges that, prior to the attack, he told Captain Wiggins about the history of conflicts with Varela and of Varela's threats to kill him, but that Captain Wiggins did nothing.  This allegation is sufficient to plausibly show that Captain Wiggins was aware of a threat to Plaintiff's safety but did nothing.  The failure to protect as well as the deliberate indifference claim will proceed against Captain Wiggins.

### 2.  Warden Dougherty

Plaintiff alleges that Warden Dougherty was aware of a history of inmate-on-inmate violence using cleaning implements, and of the practice of leaving the closet unlocked when a tierman was working, but that he took no action to change the practice.

Warden Dougherty is a supervisory official.  The United States Court of Appeals for the Second Circuit has held that "there is no special rule for supervisory liability," but that "a plaintiff must plead and prove 'that each Government-official defendant, through

the official's own individual actions, has violated the Constitution.'" *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020) (internal citation omitted).  Even after *Tangreti*, however, courts have found that a supervisor may be liable for the creation or continued enforcement of a policy that violates the plaintiff's constitutional rights.  *See, e.g.*, *Stone #1 v. Annucci*, No. 20-CV-1326(RA), 2021 WL 4463033, at *9 (S.D.N.Y. Sept. 28, 2021) (citing cases).

Plaintiff's allegations against Warden Dougherty can be construed as a claim that Warden Dougherty was deliberately indifferent to the safety of inmates.  The court finds that the claim against Warden Dougherty would benefit from further development of the record and the adversarial process.  Accordingly, the deliberate indifference to safety claim will proceed against Warden Dougherty.  Defendants may file a motion to dismiss if they believe the allegations fail to state a claim for relief.

### 3.  Officer Thornton

Plaintiff alleges that Officer Thornton was on duty in the unit when the attack occurred but did nothing to stop it.  Plaintiff alleges that other officers arrived and stopped the attack.  Thus, it is possible that Officer Thornton reported the attack upon seeing it.

"Inaction by a corrections officer to intercede and halt an attack by a fellow prisoner is sufficient basis for deliberate indifference."  *Bonner v. Barone*, No. 3:21-CV-811(SRU), 2021 WL 4905437, at *4 (D. Conn. Oct. 21, 2021) (quoting *Williams v. Connell*, No. 6:17-CV-750 (TJM/ATB), 2018 WL 3468213, at *4 (N.D.N.Y. July 28, 2018) (internal quotation marks omitted)).  However, where the assault is an isolated incident, "the plaintiff must allege an evil intent, recklessness or at least deliberate indifference to the consequences

of the officer's conduct." *Id.* (citing *Desulma v. City of New York*, No. 98Civ.2078(RMB)(RLE), 2001 WL 798002, at *7 (S.D.N.Y. July 6, 2001)).

This is the only time Varela carried out a threat of violence. Thus, the attack is an isolated incident. Plaintiff alleges no facts suggesting that Officer Thornton had an evil intent or displayed recklessness or deliberate indifference. Thus, Plaintiff fails to state a plausible failure to protect claim against Officer Thornton. *See id.* (dismissing a failure to protect claim against officer who called a code and waited for others in response to isolated inmate-on-inmate assault).

## B. Due Process

Plaintiff's due process claims against Defendants Reyes, Stanley, and Davis concern his disciplinary report and disciplinary hearing.

### 1. Captain Stanley

Plaintiff alleges only that Captain Stanley decided that he should receive a disciplinary report for fighting. "Inmates 'have no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest.'" *Stockwell v. Santiago*, No. 3:16-CV-1476(VLB), 2016 WL 7197362, at *4 (D. Conn. Dec. 8, 2016) (quoting *Freeman v. Rideout*, 808 F.2d 949, 951 (2d Cir. 1986)). In addition, "[t]he filing of a false report does not, of itself, implicate the guard who filed it in constitutional violation which occur at a subsequent disciplinary hearing." *Williams v. Smith*, 781 F.2d 319, 324 (2d Cir. 1986) (citation omitted).

Here, Plaintiff conceded that he was involved in the altercation with Varela but argues that he only was defending himself. Thus, the disciplinary report was not false.

As Plaintiff alleges solely that Captain Stanley determined that the report should issue, Plaintiff fails to state a cognizable due process claim against Captain Stanley.

### 2.  Officer Reyes and Lieutenant Davis

Plaintiff alleges that Officer Reyes delivered the disciplinary report, told Plaintiff that self-defense did not excuse actions within the Department of Correction, and suggested that he write "under duress" on the disciplinary report.  Lieutenant Davis was the disciplinary hearing officer and was aware of procedural issues relating to the hearing.

To state a claim for violation of his right to procedural due process, Plaintiff must allege facts showing that he had a protected liberty interest and that he was deprived of that interest without being afforded due process of law.  *See Walker v. Fischer*, 523 F. App'x 43, 44 (2d Cir. 2013) (citing *Giano v. Selsky*, 238 F.3d 223, 225 (2d Cir. 2001)). The Due Process Clause, standing alone, generally does not create a protected liberty interest in conditions of confinement as long as the conditions are "within the normal limits or range of custody which the conviction has authorized the State to impose."  *Meachum v. Fano*, 427 U.S. 215, 225 (1976).  However, there are circumstances under which a state statute, policy, or regulation can create a protected liberty interest relating to conditions of confinement.

In *Sandin v. Conner*, 515 U.S. 472 (1995), the Supreme Court held that a liberty interest warranting due process protection generally will be limited to "freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection under the Due Process Clause of its own force, nonetheless imposes an atypical and significant hardship on the inmate in relation to the ordinary

incidents of prison life." *Id.* at 484. Thus, to assess Plaintiff's claim, the court must determine whether the sanctions imposed at the disciplinary hearing constitute an atypical and significant hardship.

Plaintiff does not indicate what sanctions were imposed at the disciplinary hearing. In *Sandin*, the Supreme Court held that disciplinary confinement in the restrictive housing unit for thirty days did not implicate a constitutionally protected liberty interest. *Id.* at 485–86. Further, the Second Circuit has held that confinement in restrictive housing for fewer than 101 days (while "doubtless unpleasant") does not constitute an "atypical and significant" hardship sufficient to state a claim under *Sandin*. *See Sealey v. Giltner*, 197 F.3d 578, 589 (2d Cir. 1999); *see also Lewis v. Sieminski*, No. 3:08-CV-728(JCH), 2010 WL 3827991, at *6 (D. Conn. Sept. 22, 2010).

Plaintiff does not indicate that the sanctions exceeded thirty days in punitive segregation, and in fact does not indicate the sanctions, at all. Thus, Plaintiff cannot state a cognizable due process claim against Defendants Reyes and Davis.

Accordingly, the due process claims against defendants Stanley, Reyes, and Davis are dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

## C. Retaliation

While Plaintiff does not list retaliation as a separate claim, he alleges that the defendants acted in retaliation for altercations he had with correctional staff during a prior period of incarceration.

To plead a First Amendment retaliation claim, an inmate must plausibly allege "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse

action against [them], and (3) that there was a causal connection between the protected speech and the adverse action."  *Brandon v. Kinter*, 938 F.3d 21, 40 (2d Cir. 2019) (citation omitted).  The Second Circuit has "instructed district courts to 'approach prisoner retaliation claims with skepticism and particular care, because virtually any adverse action taken against a prisoner by a prison official—even those otherwise not rising to the level of a constitutional violation—can be characterized as a constitutionally proscribed retaliatory act.'"  *Dolan v. Connolly*, 794 F.3d 290, 295 (2d Cir. 2015) (citation omitted).

Plaintiff does not identify any protected speech or conduct as required to state a retaliation claim.  Further, records available on the Department of Correction's website[1] show that Plaintiff was admitted to custody on his current period of incarceration on December 11, 2018.  *See* www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=3 21453 (last visited Jul. 20, 2023)  Thus, any altercations with staff occurred more than three years before this incident.  Any retaliation claim is dismissed as conclusory.

## ORDERS

For the foregoing reasons, all claims against defendants Thornton, Stanley, Reyes, and Davis, and all retaliation claims, are dismissed pursuant to 28 U.S.C. § 1915A(b).

---

[1] The court may take judicial notice of matters of public record.  *See, e.g.*, *Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006); *United States v. Rivera*, 466 F. Supp. 3d 310. 313 (D. Conn. 2020) (taking judicial notice of BOP inmate locator information); *Ligon v. Doherty*, 208 F. Supp. 2d 384, 286 (E.D.N.Y. 2002) (taking judicial notice of state prison website inmate locator information).

The case will proceed on the failure to protect / deliberate indifference claims against Captain Wiggins and Warden Dougherty.  As such, Plaintiff has two options:

(1) If Plaintiff immediately wishes to proceed only on the claims against Defendants Wiggins and Dougherty (as set forth above), he may do so without further delay. If Plaintiff selects this option, he shall file a notice on the docket within thirty days from the date of this order, informing the court that he elects to proceed with service as to the claims against Defendants Wiggins and Dougherty.  Thereafter, the court will begin the effort to serve process on these Defendants.

(2)  Alternatively, if Plaintiff wishes to attempt to replead any of the dismissed claims asserted in his complaint (in order to attempt to state a viable claim), he may file an amended complaint within thirty days from the date of this order.  If filed, an amended complaint will completely replace the original complaint, and the court will not consider any allegations made in the original complaint when evaluating the amended version.  The court will review any amended complaint to determine whether it may proceed to service of process on any defendants named therein.  If Plaintiff elects to file an amended complaint, the original complaint addressed by this Initial Review Order will not proceed to service of process on any defendant.

If the court receives no response from Plaintiff within thirty days from the date of this order, the court will presume that Plaintiff wishes to proceed on the original complaint as to the claims permitted to proceed as authorized by this Initial Review Order; after that, Plaintiff would have to show good cause if (in any manner) he later seeks to amend the complaint.

11

**Change of Address**.  If Plaintiff changes his address at any time during the litigation of this case, Local Rule 83.1(c)2 provides that he **MUST** notify the court.  Failure to do so can result in the dismissal of the case.  Plaintiff must give notice of a new address even if he is incarcerated.  Plaintiff should write PLEASE NOTE MY NEW ADDRESS on the notice.  It is not enough simply to put the new address on a letter without indicating that it is a new address.  If Plaintiff has more than one pending case, he should indicate all the case numbers in the notification of change of address.  Plaintiff also should notify Defendants or counsel for Defendants of his new address.

IT IS SO ORDERED at Hartford, Connecticut, this 20th day of July, 2023.

_____/s/_____
Omar A. Williams
United States District Judge